UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NNDYM IN, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:09-cv-00129-TWP-WGH |
| UV IMPORTS, INC., ) | |
| A ROYAL TOUCH, INC., and ) | |
| UJAS PATEL, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

This matter presents an issue that has been twice addressed by this Court during the course of the three-year litigation. Defendant Ujas Patel ("Mr. Patel") filed his motion for partial summary judgment (Dkt. 95) on NNDYM IN, Inc.'s ("NNDYM") claim against him as an individual party to the contract at issue, or alternatively, a claim to pierce the corporate veil of UV Imports, Inc. ("UV") and A Royal Touch, Inc. ("Royal Touch"). The Court previously held that Mr. Patel was not an individual party to the contract at issue, first when setting aside the default judgment against Mr. Patel on March 30, 2011 (Dkt. 39) and again when dismissing the claim against Mr. Patel on November 1, 2011 (Dkt. 76).

After the Court dismissed NNDYM's claim against Mr. Patel, NNDYM amended its complaint on December 8, 2011 (Dkt. 85), alleging that Mr. Patel made an oral promise to be liable for the contract, that this promise is part of the contract, and alternatively, that UV and Royal Touch were Mr. Patel's alter egos and the Court should pierce the corporate veil to reach Mr. Patel. The Court is therefore required to decide, based on the new pleading, whether Mr. Patel is an individual party to the contract. Finding that genuine issues of material fact preclude

the Court from making this determination and whether UV and Royal Touch were Mr. Patel's alter egos, Mr. Patel's motion (Dkt. 95) is **DENIED**.

## I. BACKGROUND

The following undisputed facts are relevant to the current motion. NNDYM owns a Holiday Inn Express hotel in Tell City, Indiana ("the Hotel"). UV is a New Hampshire corporation with its principal place of business in Mooresville, North Carolina. Mr. Patel was a 50% owner of UV, with the remaining interest owned by one other shareholder. Mr. Patel was the President and CEO of UV until the corporation was sold in late 2009 and he resigned his position. However, Mr. Patel maintained the responsibility for the current lawsuit, as well as business affairs up to and from 2009.[1] Royal Touch is a North Carolina corporation with its principal place of business in Morrisville, North Carolina. Mr. Patel was a 50% owner of Royal Touch, with the remaining interest owned by one other shareholder. Mr. Patel was the President and CEO of Royal Touch until he sold his shares in late 2009 and resigned his position.

In 2008, the Hotel sought bids for a required renovation project.[2] The requirements were embodied in a property improvement plan ("PIP"). UV, through Mr. Patel, made contact with NNDYM to discuss the project. At a meeting at UV's offices sometime in late 2008, Mr. Patel orally agreed to be individually responsible for the contract between UV and NNDYM. UV and Royal Touch sent NNDYM a bid and line item quote on December 30, 2008. NNDYM signed and returned the line item quote to UV and Royal Touch, thereby accepting the bid. Thereafter, on February 19, 2009, NNDYM sent UV and Royal Touch a letter that set forth the terms and conditions to which the corporations agreed. Mr. Patel signed the letter as the representative for

---

[1] For example, at his September 28, 2012 deposition, Mr. Patel testified that he signed corporate paperwork and tax returns for the fiscal year 2009 even though the documents were prepared and filed in 2010 or 2011.

[2] The renovations were required by the InterContinental Hotel Group to complete renovations to remain a Holiday Inn franchise.

UV and Royal Touch and returned it on March 24, 2009. Mr. Patel was NNDYM's sole contact for the renovation project undertaken by UV and Royal Touch. Additional facts will be set forth below as needed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. **DISCUSSION**

Mr. Patel seeks summary judgment on two issues. First, that he is not an individual party to the contract between NNDYM, UV, and Royal Touch. Second, that it is inappropriate to pierce the corporate veil of UV and Royal Touch. The Court will address each issue in turn.

**A.     Party to the Contract**

NNDYM alleges that Mr. Patel made an oral promise to be individually responsible for the renovation undertaken by UV and Royal Touch. This promise is alleged to have been made at a meeting at UV's corporate headquarters, as well as reiterated in communications between NNDYM and Mr. Patel. However, the promise is not found in written materials setting forth the terms and conditions of the renovation, i.e., the line item quote, the PIP, or the February 19, 2009 letter ("the Letter"). In its amended complaint, NNDYM alleges that the entire contract between Mr. Patel, NNDYM, UV, and Royal Touch consists of the line item quote, the PIP, the Letter, *and* Mr. Patel's oral promise. Mr. Patel contends for the purposes of summary judgment that the contract consists only of the Letter. *See* Dkt. 96 at 5 (contending that "the clear and ambiguous terms of the Letter establish that it was the final agreement between the parties and that Ujas Patel did not sign the Letter in his individual capacity"). Therefore, Mr. Patel argues, because he only signed the Letter as a representative of UV and Royal Touch – as this Court has already determined on two occasions – he is not a party to the contract.

To determine if Mr. Patel's oral promise is a part of the contract, the Court must first determine if the Letter represents the final negotiations of the parties. Otherwise, the parol evidence rule would apply. "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the

4

purpose of varying or contradicting the writing." *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 688 (Ind. 2005) (quotation omitted).

Determining if a contract is completely integrated, that is "constituting a final and complete expression of all the parties' agreements," *Hinkel v. Sataria Distrib. & Packaging, Inc.*, 920 N.E.2d 766, 769 (Ind. Ct. App. 2010), is a question for the Court and requires all relevant evidence—both parol or otherwise—to be considered. *See Franklin v. White*, 493 N.E.2d 161, 167 (Ind. 1986); *Golsen-Dunlap v. Elan Motorsports Techs., Inc.*, No. 1:04-cv-00104-LJM-DKL, 2012 WL 5878023, at *3 (S.D. Ind. Nov. 20, 2012). Integration clauses, while relevant, are not determinative. *Golsen-Dunlap*, 2012 WL 5878023, at *3.

Here, the Court has reviewed the Letter, which Mr. Patel argues is the final integrated agreement between the parties, the affidavits, and deposition testimony submitted for this motion. The Letter does not contain an integration clause and the Court does not read "clear and unambiguous terms" establishing the Letter as the final agreement between the parties. The Letter states, "For further detail and reference the above mentioned PIPs should be reviewed." Thus, the Letter explicitly invokes the PIPs, which suggests it is not an integrated document. The Letter is silent as to the specific term of whether Mr. Patel is an individual party to the contract, and while it does list him as only a representative of UV and Royal Touch, the Court finds that as a whole, it cannot hold as a matter of law that the document is integrated.

Having found that the Letter is not the final integrated agreement between the parties, the Court finds that the evidence does not establish that Mr. Patel's oral promise was not included in the parties' contract. Evidence of the promise will be admissible to the fact finder to determine if Mr. Patel was intended to be an individual party to the contract. Therefore, Mr. Patel's motion for summary judgment on this issue is **DENIED**.

**B.     Piercing the Corporate Veil**

In the alternative, NNDYM alleges that UV and Royal Touch were alter egos of Mr. Patel, such that the Court should pierce the corporate veil and assign individual liability to Mr. Patel.  NNDYM argues that Mr. Patel misused the corporate form and that Mr. Patel's affidavit claiming that both corporations observed corporate formalities is undermined by Mr. Patel's deposition testimony.  "Efforts to pierce the corporate veil are governed by the law of the state of incorporation."  *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996).  UV was incorporated under New Hampshire law, while Royal Touch is incorporated under North Carolina law.  Therefore, the Court will address the law of each jurisdiction separately.

**1.     Piercing the Corporate Veil in New Hampshire**

"New Hampshire courts do not hesitate to disregard the fiction of the corporation when circumstances would lead to an inequitable result."  *Terren v. Butler*, 597 A.2d 69, 72 (N.H. 1991) (quotation omitted).  In New Hampshire, piercing the corporate veil is equitable[3] and occurs when "a shareholder suppresses the fact of incorporation, misleads his creditors as to the corporate assets, or otherwise uses the corporate entity to promote injustice or fraud."  *In re Martin*, 413 B.R. 12, 15 (Bankr. D.N.H. 2008); *see LaMontagne Builders, Inc. v. Bowman Brook Purchase Grp.*, 837 A.2d 301, 306 (N.H. 2003).  The courts have inquired into whether a shareholder substantially depleted corporate funds, *Terren*, 597 A.2d at 72, used the corporation to further private business or if the corporation is undercapitalized, *Vill. Press, Inc. v. Stephen*

---

[3] In New Hampshire, piercing the corporate veil is an equitable remedy decided by the courts.  *LaMontagne Builders, Inc. v. Bowman Brook Purchase Grp.*, 837 A.2d 301, 306 (N.H. 2003).  Seventh Circuit law dictates that whether piercing the corporate veil is a jury question depends on the state law applied.  *See Int'l Fin. Servs. Corp v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004) (finding that under Illinois law, piercing the corporate veil is an equitable doctrine for the court to decide, and it is not a jury question).  Therefore, as to UV, whether the corporate form should be disregarded is a question for the Court to decide.

6

*Edward Co., Inc.*, 416 A.2d 1373, 1375 (1980), or disingenuously induced a third party into a promise that was later breached in bad faith, *LaMontagne Builders, Inc.*, 837 A.2d at 306. However, "the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law." *Vill. Press, Inc.*, 416 A.2d at 1375.

Mr. Patel focuses on whether UV was undercapitalized or used for private business, such as in *Village Press, Inc.* In *Village Press, Inc.*, there was no evidence that the defendant used the corporate entity for personal business, nor concerning the capitalization or solvency of the corporation. 416 A.2d at 1375. Mr. Patel argues and attests that UV (1) was a separate and distinct legal entity, (2) maintained separate corporate records, submitted state and federal tax returns, and maintained separate bank accounts and financial records, (3) the corporate records were maintained at UV's principal place of business, and (4) UV was not undercapitalized and remained solvent at all times. Dkt. 96 at 10. Thus, he argues, NNDYM cannot show that UV was an alter ego because corporate formalities were followed.

NNDYM argues that Mr. Patel's alleged perpetration of injustice or fraud is akin to *LaMontagne Builders, Inc.* There, the New Hampshire Supreme Court upheld piercing of the corporate veil when the trial court found that (1) the shareholder breached an express promise to plaintiff, (2) the promise was made to prevent the plaintiff from filing a mechanic's lien, (3) the shareholder had knowledge the promise would prevent plaintiff from filing the lien, (4) the shareholder had no intention of honoring the promise, (5) the promise was breached without good cause, (6) the reasons for breaching the promise were disingenuous and in bad faith, and (7) the shareholder or his family received a financial benefit. *Id.*

NNDYM argues that the facts of this case fall within "virtually the same criteria that was deemed sufficient to pierce the corporate veil in *LaMontagne*." Dkt. 97 at 18. Specifically, (1) Mr. Patel promised to be personally liable for his companies' work, (2) he did so to secure NNDYM's business, (3) he knew the promise was a stipulation before NNDYM would accept UV's bid, (4) he had no intention to fulfill his promise, as evidenced by this litigation, (5) his reasons for breaching the promise are in bad faith, (6) his motion is based on a faulty affidavit, and (7) his family received a windfall from NNDYM. Dkt. 97 at 18. In its surreply, NNDYM further argues that Mr. Patel's September 28, 2012 deposition contradicts the affidavit filed in support of his motion and contains inconsistencies supporting that corporate formalities have been ignored. Additionally, NNDYM has requested, and Mr. Patel has failed to produce, documents that could support NNDYM's claim.[4]

The Court finds that NNDYM has not presented "conclusive" proof that Mr. Patel used UV to promote a fraud or injustice, "as would be required to pierce the corporate veil at the summary judgment stage." *Antaeus Enter., Inc. v. Davidson*, 774 F. Supp. 2d 409, 416 (D.N.H. 2011) (applying New Hampshire law). However, the record before the Court contains genuine issues of material fact whether Mr. Patel used UV as an alter ego. So while the Court will not hold at this stage of litigation that the corporate veil should be pierced, NNDYM has put forth sufficient evidence to defeat summary judgment for UV. *See id.* (finding that genuine dispute as to whether corporate form was used to promote fraud or injustice must be resolved by the court at trial). Therefore, Mr. Patel's motion on this issue is **DENIED**.

### 2. Piercing the Corporate Veil in North Carolina

North Carolina courts "will disregard the corporate form or 'pierce the corporate veil' when 'necessary to prevent fraud or to achieve equity.'" *State ex rel. Cooper v. Ridgeway*

---

[4] In a January 14, 2013 Order, the Court ordered Mr. Patel to produce the documents to NNDYM.

*Brands Mfg., LLC*, 666 S.E.2d 107, 113 (N.C. 2008) (quoting *Glenn v. Wagner*, 329 S.E.2d 326, 330 (1985)). The North Carolina Supreme Court has adopted the instrumentality rule, which "allows for the corporate form to be disregarded if the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." *Id.* at 113–14 (internal quotation omitted). The instrumentality rule has three elements: "(1) stockholders' control of the corporation amounting to 'complete domination' with respect to the transaction at issue; (2) stockholders' use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights; and (3) this wrong or breach of duty must be the proximate cause of the injury to the other party." *Id.* at 114. Nonexhaustive factors to consider include inadequate capitalization, non-compliance with corporate formalities, complete dominion and control of the corporation so that it has no independent identity, and excessive fragmentation of a single enterprise into separate corporations. *Green v. Freeman*, 733 S.E.2d 542, 553 (N.C. Ct. App. 2012).

The Court finds that NNDYM has presented evidence on the relevant factors creating a genuine issue of material fact that Royal Touch was an alter ego of Mr. Patel. Most significantly, the Court notes that Mr. Patel acted on behalf of both UV and Royal Touch interchangeably, "sold" his shares of Royal Touch to his wife but no money changed hands, and Royal Touch leased office space to UV and other corporations owned by Mr. Patel and no lease records have yet been produced. These facts indicate non-compliance with corporate formalities, as well as complete dominion and excessive fragmentation. However, for the reasons stated above in Section B.1, the Court does not find at this stage that NNDYM has established as a matter of law that Mr. Patel used Royal Touch to cause an injury to NNDYM. The Court

recognizes that in North Carolina, the question of piercing the corporate veil may be presented to the jury. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 350 (4th Cir. 1998) (stating that "veil piercing may present a jury question in North Carolina[, b]ut the question cannot reach a jury . . . without evidence supporting the claim that one corporation is merely an instrumentality" of another corporation or shareholder); *see also Glenn*, 329 S.E.2d at 457–58 (discussing piercing the corporate veil in the context of whether the jury should have been instructed on the issue); Mark A. Olthoff, *Beyond the Form—Should the Corporate Veil be Pierced?*, 64 UMKC L. Rev. 311, 331 (1995) (stating that in North Carolina, the question of piercing the corporate veil is presented to the jury). Therefore, finding there is ample evidence creating a genuine issue of material fact on this issue appropriate for the jury; Mr. Patel's motion is **DENIED**.

## IV. <u>CONCLUSION</u>

For these reasons, Mr. Patel's motion for partial summary judgment (Dkt. 95) is **DENIED**. The claims against him remain set for trial.

SO ORDERED.

Date: 02/13/2013 _____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Danny E. Glass
FINE & HATFIELD
deg@fine-hatfield.com

Thomas H. Bryan
FINE & HATFIELD
thb@fine-hatfield.com

Edward H. Maginnis
MAGINNIS LAW, PLLC
19 West Hargett Street, Suite 906
Raleigh, North Carolina  27601

Mark R. Ramsey
RAMSEY LAW OFFICE
mark@psci.net

John J. Conway
SULLIVAN HINCKS & CONWAY
johnconway@shlawfirm.com

Ryan A. Mahoney
SULLIVAN HINCKS & CONWAY
ryanmahoney@shlawfirm.com